UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-62191-BLOOM/Hunt

ADIDAS AG, *et al.*,

    Plaintiffs,

v.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.
_____/

## ORDER ON MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiffs' adidas AG, adidas International Marketing B.V., and adidas America, Inc. ("Plaintiffs") Motion for Entry of Final Default Judgment Against Defendants, ECF No. [36] ("Motion"), filed on February 20, 2024. A Clerk's Default was entered against Defendants on February 1, 2024, ECF No. [35], as Defendants failed to appear, answer, or otherwise plead to the Amended Complaint, ECF No. [21], despite having been served. *See* ECF No. [31]. The Court has carefully considered the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the following reasons, Plaintiffs' Motion is **GRANTED**.

    **I.**    **INTRODUCTION**

Plaintiffs sued Defendants for trademark counterfeiting and infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114; false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); common-law unfair competition; and common-law trademark infringement. The Amended Complaint alleges that Defendants are promoting, advertising, distributing, offering for sale and selling goods bearing and/or using counterfeits and confusingly similar

imitations of Plaintiffs' registered trademarks within the Southern District of Florida through various Internet based e-commerce stores operating under their seller names identified on Schedule "A" attached to Plaintiffs' Motion for Entry of Final Default Judgment (the "E-commerce Store Names"). *See* Motion, ECF No. [36] at 19–20.

Plaintiffs further assert that Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiffs because Defendants have (1) deprived Plaintiffs of their right to determine the manner in which their trademarks are presented to the public through merchandising; (2) defrauded the public into thinking Defendants' goods are goods authorized by Plaintiffs; (3) deceived the public as to Plaintiffs' association with Defendants' goods and the e-commerce stores that market and sell the goods; and (4) wrongfully traded and capitalized on Plaintiffs' reputation and goodwill, as well as the commercial value of Plaintiffs' trademarks.

In their Motion, Plaintiffs seek the entry of default final judgment against Defendants[1] in an action alleging trademark counterfeiting and infringement, false designation of origin, common-law unfair competition, and common-law trademark infringement. Plaintiffs further request that the Court (1) enjoin Defendants from producing or selling goods that infringe their trademarks; (2) require any marketplace administrator to permanently remove any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of Plaintiffs' trademarks via the e-commerce stores operating under the E-commerce Store Names; (3) require the surrender of Defendant's goods bearing Plaintiffs' trademarks to Plaintiffs; and (4) award statutory damages.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. "[A]

---

[1] Defendants are the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" of Plaintiffs' Motion, and Schedule "A" of this Order. *See* Motion, ECF No. [36] at 19–20.

defendant's default does not in itself warrant the court entering a default judgment." *DirecTV, Inc. v. Huynh,* 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Granting a motion for default judgment is within the trial court's discretion. *Nishimatsu*, 515 F.2d at 1206. Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleading for the judgment to be entered. *See id.; see also Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint and is therefore established by the entry of default. . ."). Upon a review of Plaintiffs' submissions, it appears there is a sufficient basis in the pleading for the default judgment to be entered in favor of Plaintiffs.

## II. FACTUAL BACKGROUND[2]

Plaintiffs are the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office ("adidas Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| ADIDAS | 0,891,222 | May 19, 1970 | IC25. sport shoes namely, track and field shoes, baseball, boxing, football, skating, golf, and soccer shoes; sportswear namely, suits, shorts, pants, tights, shirts, gloves, and the like; jerseys; socks; sport shoes namely, track and field training shoes, basketball shoes, and tennis shoes. |
| adidas | 1,300,627 | October 16, 1984 | IC 025. Sportswear-Namely, Suits, Shorts, Pants, Tights, Shirts, Jerseys, Socks, Gloves, Jackets, Coats, Swimwear, Sweaters, Caps, Pullovers, Warm-Up Suits, Boots, Shoes, Slippers. |

---

[2] The factual background is taken from Plaintiffs' Amended Complaint, ECF No. [21], Plaintiffs' Motion for Entry of Final Default Judgment Against Defendants, ECF No. [36], and supporting evidentiary submissions.

3

| | | | |
|---|---|---|---|
| | 2,179,796 | August 11, 1998 | IC 025. sports and leisure wear, namely shorts, pants, shirts, T-shirts, jerseys, tights, socks, gloves, jackets, swimwear, sweaters, caps and hats, pullovers, warm-up suits, rain-suits, ski suits, jump suits, boots, slippers, sandals, specific purpose athletic shoes, and general purpose sport shoes |
| | 2,278,591 | September 21, 1999 | IC 25. sports and leisure wear, namely, shorts. |
| | 2,411,802 | December 12, 2000 | IC 018. All purpose sport bags, athletic bags, traveling bags, backpacks, knapsacks.<br>IC 025. Sports and leisure wear, namely, shorts, pants, shirts, T-shirts, jerseys, socks, gloves, jackets, swimwear, caps and hats, pullovers, sweat-shirts, sweat suits, track suits, warm-up suits; boots, sandals, specific purpose athletic shoes and general all purpose sports shoes.<br>IC 028. Sports balls and playground balls; guards for athletic use, namely, shin guards, knee guards and leg guards. |
| | 3,029,127 | December 13, 2005 | IC 025. Clothing, namely, T-Shirts, sweatshirts, jackets and coats. |

*See* Declaration of Mia Nidia Gutierrez, ECF No. [9-2] ¶¶ 4–5; ECF No. [21-1] (containing Certificates of Registrations for the adidas Marks at issue). The adidas Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. *See* Declaration of Mia Nidia Gutierrez, ECF No. [9-2] ¶¶ 4–5.

Defendants, by operating the Internet based e-commerce stores under the seller names identified on Schedule "A" (the "E-commerce Store Names"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what Plaintiffs have determined to be counterfeits, infringements, reproductions, and/or colorable imitations of the adidas Marks. *See* Declaration of

Mia Nidia Gutierrez, ECF No. [9-2] ¶¶ 13–17; Declaration of Virgilio Gigante, ECF No. [9-3] ¶ 2; Declaration of Kathleen Burns, ECF No. [9-4] ¶ 4.

Although each Defendant may not copy and infringe each adidas Mark for each category of goods protected, Plaintiffs have submitted sufficient evidence showing that each Defendant has infringed, at least, one or more of the adidas Marks. *See* Declaration of Mia Nidia Gutierrez, ECF No. [9-2] ¶¶ 13–17. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the adidas Marks. *See id*. ¶¶ 13, 16.

Plaintiffs' counsel retained Invisible Inc., a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing versions of Plaintiffs' products by Defendants and to document the available payment account data for receipt of funds paid to Defendants for the sale of counterfeit versions of Plaintiffs' branded products. *See* Declaration of Mia Nidia Gutierrez, ECF No. [9-2] ¶ 14; Declaration of Virgilio Gigante, ECF No. [9-3] ¶ ¶ 2; Declaration of Kathleen Burns, ECF No. [9-4] ¶ ¶ 3. Invisible Inc accessed the Internet based e-commerce stores operating under each of Defendants' E-commerce Store Names and placed orders from each Defendant for the purchase of various products, all bearing and/or using counterfeits of, at least, one of Plaintiffs' trademarks at issue in this action, and requested each product to be shipped to the Southern District of Florida. *See* Declaration of Kathleen Burns, ECF No. [9-4] ¶ 4 and Comp. Ex. 1 thereto, ECF No. [9-5]. Each order was processed entirely online, and following the submission of the orders, Invisible Inc documented information for finalizing payment for the various products ordered to their respective payment accounts,[3] identified on Schedule "A" hereto.

---

[3] Defendant Numbers 1–12 operate via the non-party e-commerce marketplace platform, Amazon.com. Amazon.com is an e-commerce marketplace that allows the Defendants to conduct their commercial transactions privately via Amazon's payment processing and retention service, Amazon Payments, Inc. *See* Declaration of Virgilio Gigante, ECF No. [9-3] ¶ 4; Declaration of Kathleen Burns, ECF No. [9-4] ¶ 4 n.1.

(*See id*.) At the conclusion of the process, the detailed web page captures and images of the various products bearing and/or using the adidas Marks ordered via Defendants' E-commerce Store Names were sent to Plaintiffs' representative for inspection. *See* Declaration of Mia Nidia Gutierrez, ECF No. [9-2] ¶ 15; Declaration of Virgilio Gigante, ECF No. [9-3] ¶ 2; Declaration of Kathleen Burns, ECF No. [9-4] ¶ 4.

Plaintiffs' representative reviewed and visually inspected the products bearing and/or using the adidas Marks ordered and purchased by Invisible Inc and determined the products were not genuine versions of Plaintiffs' goods. *See* Declaration of Mia Nidia Gutierrez, ECF No. [9-2] ¶¶ 16–17.

## III. DISCUSSION

### A. Claims

#### 1. *Trademark Counterfeiting and Infringement Under 15 U.S.C. § 1114 (Count I)*

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. In order to prevail on its

---

Defendant Numbers 13–15 operate via the non-party Internet marketplace platform, Temu.com, which is operated by WhaleCo, Inc., and have their payments processed on their behalf via Temu.com's payment processing and retention services using an aggregate escrow account in the name of Temu.com. *See* Declaration of Virgilio Gigante, ECF No. [9-3] ¶ 5; Declaration of Kathleen Burns, ECF No. [9-4] ¶ 4 n.1.

Defendant Numbers 16–18 operate via the non-party e-commerce marketplace platform Walmart.com, which is operated by Walmart Inc., and have their payments processed on their behalf via Walmart.com's payment processing and retention services using an aggregate escrow account in the name of Walmart.com. *See* Declaration of Virgilio Gigante, ECF No. [9-3] ¶ 6; Declaration of Kathleen Burns, ECF No. [9-4] ¶ 4 n.1.

Defendant Number 19 operates via the non-party Internet marketplace platform Ecrater.com, and uses money transfer and retention services with PayPal, Inc. *See* Declaration of Virgilio Gigante, ECF No. [9-3] ¶ 7; Declaration of Kathleen Burns, ECF No. [9-4] ¶ 4 n.1.

trademark infringement claim under Section 32 of the Lanham Act, Plaintiffs must demonstrate that (1) they had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same, or confusingly similar to Plaintiffs' trademark, such that consumers were likely to confuse the two. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

### 2. *False Designation of Origin Under 15 U.S.C. § 1125(a) (Count II)*

To prevail on a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiff must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval, of Defendants' goods by Plaintiffs. *See* 15 U.S.C. § 1125(a)(1). The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim – i.e., whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 780 (1992).

### 3. *Common-Law Unfair Competition and Trademark Infringement (Counts III and IV)*

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under Florida common law. *Rolex Watch U.S.A., Inc. v. Forrester,* No. 83- 8381-CIV-PAINE, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1986) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in

*John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983)."); *see also Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975) ("As a general rule . . . the same facts which would support an action for trademark infringement would also support an action for unfair competition.").

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. *See PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004).

### B. Liability

The well-pled factual allegations of Plaintiffs' Amended Complaint properly allege the elements for each of the claims described above. *See* Amended Complaint, ECF No. [21]. Moreover, the factual allegations in Plaintiffs' Amended Complaint has been substantiated by sworn declarations and other evidence and establish Defendants' liability under each of the claims asserted in the Amended Complaint. Accordingly, default judgment pursuant to Federal Rule of Civil Procedure 55 is appropriate.

### C. Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See e.g., PetMed Express,* 336 F. Supp. 2d at 1222–23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiffs to prevent further infringement absent an

injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.")

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392–93 (2006). Plaintiffs have carried their burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). Plaintiffs' Amended Complaint alleges that Defendants' unlawful actions have caused Plaintiffs irreparable injury and will continue to do so if Defendants are not permanently enjoined. *See* Amended Complaint, ECF No. [21]. Further, the Amended Complaint alleges, and the submissions by Plaintiffs show, that the goods promoted, advertised, offered for sale, and sold by Defendants are nearly identical to Plaintiffs' genuine products and that consumers viewing Defendants' counterfeit goods post-sale would actually confuse them for Plaintiffs' genuine products. *See id*. "Defendants' actions are likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale in or through Defendants' e-commerce stores are genuine goods originating from, associated with, and/or approved by [Plaintiffs]." *See* Amended Complaint, ECF No. [21] at 27.

Plaintiffs have no adequate remedy at law so long as Defendants continue to operate the E-commerce Store Names because Plaintiffs cannot control the quality of what appears to be their products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiffs' reputation and goodwill that will result if Defendants' infringing and counterfeiting actions are allowed to continue. Moreover, Plaintiffs face hardship from loss of sales and their inability to control their reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiffs' trademarks, which is an illegal act.

Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co*., 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Defendants have created an Internet-based counterfeiting scheme in which they are profiting from their deliberate misappropriation of Plaintiffs' rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities by requiring their listings and associated images be removed, and the goods

of each Defendant bearing one or more of Plaintiffs' trademarks be surrendered, such that these means may no longer be used as instrumentalities to further the sale of counterfeit goods.

### D.  Statutory Damages for the Use of Counterfeit Marks

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000 nor more than $200,000 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000 per mark per type of good. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiffs have elected to recover an award of statutory damages as to Count I of the Amended Complaint.

The Court has wide discretion to determine the amount of statutory damages. *See PetMed Express,* 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement. *Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809-CIV, 2014 WL 1652044, at *7 (S.D. Fla. Apr. 23, 2014) (quoting *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.")); *Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.*, No. CIV.A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See* S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express,* 336 F. Supp. 2d at 1220

(statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

This Court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007). Although the Court is permitted to conduct a hearing on a default judgment regarding damages pursuant to Fed. R. Civ. P. 55(b)(2)(B), an evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also PetMed Express*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing).

Here, the allegations in the Amended Complaint, which are taken as true, clearly establish Defendants intentionally copied Plaintiffs' Marks for the purpose of deriving the benefit of Plaintiffs' famous reputation. As such, the Lanham Act permits the Court to award up to $2,000,000 per infringing mark on each type of good as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each Defendant promoted, distributed, advertised, offered for sale, and/or sold at least one (1) type of good bearing and/or using at least one (1) mark which were in fact counterfeits of at least one of Plaintiffs' Marks. *See* Amended Complaint, ECF No. [21] ¶¶ 18, 26, 44; Declaration of Mia Nidia Gutierrez, ECF No. [9-2] ¶¶ 13–17; Declaration of Kathleen Burns, ECF No. [9-4] ¶ 4 and Comp. Ex. 1 thereto, ECF No. [9-5]; Declaration of Mia Nidia Gutierrez, ECF No. [36-3] ¶¶ 5–6; Statutory Damages Calculation Chart,

12

ECF No. [36-4] Based on the above considerations, Plaintiffs suggest the Court award statutory damages by starting with a baseline of twenty thousand dollars ($20,000.00), trebled to reflect Defendants' willfulness, and doubled for the purpose of deterrence, resulting in one hundred twenty thousand dollars ($120,000.00) per trademark counterfeited per type of good sold per Defendant. *See* Declaration of Mia Nidia Gutierrez, ECF No. [36-3] ¶¶ 5–6; Statutory Damages Calculation Chart, ECF No. [36-4]. The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiffs' trademarks, compensate Plaintiffs, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c). The Court finds that this award of statutory damages falls within the permissible statutory range under 15 U.S.C. § 1117(c) and is just.

### E. Damages for False Designation of Origin

Plaintiffs' Amended Complaint also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (Count II). *See* 15 U.S.C. § 1125(a). As to Count II, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment on Count II is limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

### F. Damages for Common Law Unfair Competition and Trademark Infringement

Plaintiffs' Amended Complaint further sets forth a cause of action under Florida's common law of unfair competition (Count III) and trademark infringement (Count IV). Judgment on Count III and Count IV are also limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion, **ECF No. [36]**, is **GRANTED** against those Defendants listed in the attached Schedule "A." Final Default Judgment will be entered by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 27, 2024.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Case No. 23-cv-62191-BLOOM/Hunt

SCHEDULE "A"
DEFENDANTS BY NUMBER, E-COMMERCE STORE NAME,
FINANCIAL ACCOUNT INFORMATION, INFRINGING PRODUCT

| Def. No. | Defendant / E-commerce Store Name | Financial Account Information: PayPal Account / Merchant ID / Store Number | Additional Username / Business Name | Infringing Product Number |
|---|---|---|---|---|
| 1 | 10-13 working days to arrive | A104BSJB5MXXRK | shanximingfenggongchengyouxiangongsi | B0CGPL7WPD |
| 2 | Aditi vyas | A3N64DM6RPU6X5 | ADITI VYAS | B0CFB64Q8F B0CFB5D7LW |
| 3 | CEUKIJMK | A2M1AIPWHWPX7S | Shenzhenshimingfendengshiyouxiangongsi | B0CFTPPRQ5 |
| 4 | Highbene | A1EYBTNTRC6B4A | xixianxinqukonggangxinchengpuranmobaihuodian | B0CDWLC4VF B0CDWJ8735 |
| 5 | Hui Cui Center | A17CS92BSWKLL4 | fuzhoudinghandianzishangwuyouxiangongsi | B0CG3F38RJ B0CG3D8ZXR B0CG3D1QJ1 |
| 6 | JEEKOS 5-15 days delivery | A2B6KA2F9CP4NQ | JinZhongShiYuCiQuFeiErWenJuDian | B0CDC6H4ZM |
| 7 | Rotang | A7MUXMWBXDA2 | Wuping County Xianhua Electronic Commerce Co., Ltd | B0CC99WW4C B0CC98Q8W4 B0CC99DVZR |
| 8 | Victerui | A3M6SXYJUWJBCA | Guizhou Weicteron E-Commerce Co., Ltd. | B0CCYFSJFL B0CDC5GWCJ |
| 9 | wirpofesn | AZQI3IOK11RDE | Han Feng | B0CB4XT3LZ B0CB515VZ5 |
| 10 | yaotaomaoyi | A3OP5MVNTBTU65 | shenzhenyaotaomaoyiyouxiangongsi | B0C9J4R8R8 B0C9JGSRWV |
| 11 | YBDL | AH97Z9AWII08F | chongqinglikailiangdianzishangwuyouxiangongsi | B0CB324GH5 |
| 12 | 卓佳贸易有限公司 | A334NQDD9Y0FLX | lihaihua | B0CFQF1CG9 |
| 13 | Football Sportswear Monopoly | 6112529769303 | | 601099519681257 |
| 14 | Jersey Customization | 634418211479193 | | 601099526000510 |
| 15 | George I | 3972081450513 | | 601099526235757 |
| 16 | Pacinoble | 101276555 | ZHANGPUFEITENGWANGLUOKEJIYOUXIANGONGSI | 3758619850 |
| 17 | Party supply Co.Ltd | 101127424 | Shenzhenshi Mengwangxun Dianzi Youxian Gongsi | 3156506977 |

| 18 | WJCo.ltd | 101257630 | Yingtan Jinshuo Network Technology Co., Ltd. | 1709928401 |
|---|---|---|---|---|
| 19 | zs-hong0227 | yuy_jina753@hotmail.com yuuujinai0209@hotmail.com V6RPY4U3BTGPL | 金爱俞 连城县夙景辉百货店 LIANCHENGXI | 43037639 |